Fecteau, J.
The plaintiff Philip J. Curtis (“Curtis”) is a former member of the Fitchburg Fire Department (“Department”). Curtis filed a two-count amended complaint against the defendants. In his amended complaint Curtis seeks declaratory and injunctive relief reinstating him to the next available vacancy as a firefighter in the Department (Count I); Curtis further alleges that he was subject to unlawful discrimination in violation of the provisions of G.L.c. 15 IB, §4(1C), G.L.c. 151B, §4(16), the Age Discrimination in Employment Act, 29 U.S.C. §§621 et seq., and the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq. (Count II).[1] This matter is presently before the Court on the defendant’s motion for summary judgment as to Count II of the amended complaint, pursuant to Mass.R.Civ.P. 56, in which the remaining defendant alleges that there are no genuine disputes of material fact and that as a matter of law summary judgment as to Count II of the amended complaint should be granted in its favor. For the reasons set forth below, the motion for summary judgment on Count II of the amended complaint is ALLOWED.
BACKGROUND
The undisputed facts as revealed by the summary judgment record viewed in the light most favorable to Curtis, as the nonmoving party, are as follows.
Curtis was initially appointed as a firefighter for the City of Fitchburg in 1969. He worked for the Department up until November 9,1990 when he retired on a disability based on diagnoses of alcoholism and dependent personality disorder, after confirmation by a panel of three psychiatrists pursuant to disability procedures. Approximately six and one half years later, on March 26, 1997, Curtis applied to the Public Employees Retirement Administration Commission (PERAC) for reinstatement to his former position as firefighter. In support of his reinstatement, Curtis submitted a letter from his treating psychiatrist, Dr. Theodore Jellinek dated February 10, 1997, stating his opinion that Curtis was now capable of returning to his duties as a firefighter with the Department. On April 28, 1997 PERAC notified Curtis that a medical panel would be convened to evaluate his present medical condition. The notice was also received by Kevin Roy, Chief of the Fitchburg Fire Department (“Roy”). On May 17, 1997 the panel met with Curtis and after a psychiatric examination determined that Curtis no longer suffered from the disabling conditions. The results of the examination were submitted to the Fitchburg Retirement Board and received by them on May 20, 1997. On June 9, 1997 the Retirement Board notified Roy that it had accepted the findings of PERAC and had voted at its meeting on May 29, 1997 that Curtis could be returned to work as a firefighter.
The Mayor of the City of Fitchburg is the civil service appointing authority, while Roy is administratively responsible for hiring new firefighters. During the winter of 1997, four firefighters informed Roy of their intention to retire effective mid-July of 1997. Based on the potential vacant positions, on March 31, 1997 Roy requested the Mayor[2] to call for a civil service list to replace the four retiring firefighters. On May 2, 1997, Roy received a certified list of candidates for the prospective firefighter positions. On May 16, 1997 all four candidates were interviewed. Between May 21 and May 23, 1997, the candidates were sent for medical examinations, psychological examinations and physical agility tests. On May 29, 1997 Roy recommended the appointment of all four candidates to the Mayor. On June 3, 1997 the Mayor appointed the four candidates, subject to the confirmation of the City Council. The City Council referred the appointments to the Appointments Committee which considered the candidates’ qualifications and made a favorable recommendation. On June 17, 1997 at its regular meeting the full City Council confirmed the appointments. The four candidates were sworn into office by the city clerk at that same meeting.
Curtis alleges that he was not reinstated to the Department because he was subject to unlawful age and disability discrimination. The defendant contends that since all vacancies had been filled by the time Roy was notified of Curtis’ employment status, there was not an open position available. In addition, since it had been almost seven years since Curtis had been employed as a firefighter, and Curtis had not had a physical examination in the interim to determine whether he could perform the essential elements of the *392 job, there was concern of whether he would be able to perform the duties of the job. The defendants also contend that G.L.c. 31, §39 requires that Curtis receive retraining as a requirement of reinstatement.

Procedural History

On March 31, 1998 Curtis filed a motion for partial summary judgment alleging that the City failed to reinstate him to his previous position as a firefighter after it was determined by a regional medical panel that he was no longer disabled. He alleged that the City’s failure to reinstate him violated G.L.c. 32, §8.[3] The City of Fitchburg opposed the motion and filed a cross motion for summary judgment. In its memorandum of decision dated December 10, 1998, this Court denied both motions and ordered the case to PERAC to reconvene a regional medical panel and evaluate Curtis’ condition using the new standards as imposed by Statute 1996, c. 306 §16.[4] (Donohue, J.) (9 Mass. L. Rptr. 512). Curtis’ third motion for reconsideration of denial of summary judgment.[5] relied primarily on Sullivan v. Town of Brookline, 453 Mass. 353 (2001), which considered the issue of PERAC medical evaluations pre- and post-amendment, finding that it was not unreasonable for PERAC to continue to perform medical evaluations under the old standard until PERAC had had ample opportunity to draft new regulations reflecting the amendment.[6] Although Curtis urged reinstatement based on the reasoning in Sullivan, the Court found otherwise and denied Curtis’ third motion for reconsideration. See Curtis v. City of Fitchburg, Civil No. 97-1375A (Worcester Super. Ct. December 17, 2001) (Donohue, J.).
DISCUSSION

Standard of Review

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 420 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).

Summary Judgment in Cases of Employment Discrimination Cases

Curtis alleges that issues of employment discrimination, especially on claims of disparate treatment, should not be decided within a summary judgment action. A critical element of Curtis’ employment discrimination case is the requirement that he show how the employer acted with a discriminatory motive. Smith College v. Massachusetts Commission Against Discrimination, 376 Mass. 221, 227 (1978). Curtis alleges that summary judgment is inappropriate since this is a fact-based inquiry and more properly within the province of the factfinder. However, cases have shown that summary judgment is appropriate in certain circumstances, such as if a plaintiff is unable to maintain a prima facie case or where the plaintiff is unable to present admissible evidence to show that the employer’s proffered reasons for its adverse employment decision were in fact false. Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 705 (1992); McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 437-38 (1989) (summary judgment appropriate where plaintiff cannot offer admissible evidence to prove pretext on the part of the employer); Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 440 (1995) (where evidence insufficient to support judgment in plaintiffs favor, summary judgment appropriate).

Age Discrimination Claim

As a jurisdictional prerequisite to bringing a claim of unlawful discrimination in Superior Court, a plaintiff must first file a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) within six months of the date of the unlawful discriminatory action.
Curtis did so, filing with the Equal Employment Opportunity Commission (“EEOC”) and the MCAD on August 1, 1997 less than two months after the Department filled the four firefighter vacancies. The complaint alleged both age and disability discrimination and named the City of Fitchburg, the Fitchburg Fire Department, Chief Kevin Roy, and the then Mayor of Fitchburg, Jeffrey Bean as respondents. A Notice of Right to Sue was received by Curtis from the EEOC on December 2, 1997. Subsequently, Curtis requested and was granted leave to withdraw the MCAD charges on December 24, 1997 and this claim was thereafter filed with this Court. G.L.c. 151B, §9 (three-year statute of limitations from time of occurrence of the alleged unlawful practice).
Curtis alleges that he was not reinstated to his former position as firefighter with the Department because of his age. He bases this allegation on violations of both federal and state law.
G.L.c. 15 IB, §4(1C) provides, that it is an unlawful practice:
[flor the commonwealth or any of its political subdivisions, by itself or its agent, because of the age of any individual, to refuse to hire or employ or to bar or discharge from employment such individual in compensation or in terms, conditions or privileges of employment unless pursuant to any other general or special law.
For terms of the statute, age is defined as an “individual’s birth of greater than forty years.” G.L.c. 151B, §1(8).
*393 Curtis also alleges a violation of federal law under 29 U.S.C. §§621 et seq., the Age Discrimination in Employment Act (“ADEA”).[7] 29 U.S.C. §623(a) provides that is an unlawful practice for an employer:
to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age[.)
Curtis’ claim is based on disparate treatment, i.e., that in making an employment decision, the City used age as a determinative factor. Hazen Paper Co. v. Biggens, 507 U.S. 604, 610 (1993). “It is the veiy essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age.” Id.
“The analysis of a discrimination claim is essentially the same under the state and federal statutes.” White v. University of Massachusetts at Boston, 410 Mass. 553, 557 (1991). In order to maintain a claim of unlawful discrimination, the courts have established a “three stage order of proof.” McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This methodology of proof, which sets out the requirements for establishing a prima facie case, has since been largely adopted by our courts. Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130 (1976). Aplaintiff alleging that an employer has engaged in unlawful age discrimination must be able to show that (1) he is over the age of 40; (2) he was capable of performing the job in an acceptable manner; (3) he was not hired for the position; and, (4) a younger individual was hired in his place. By establishing the prima facie case, the plaintiff has met his initial burden of proof and raises a presumption of discrimination on the part of the employer. School Committee of Braintree v. Massachusetts Commission Against Discrimination, 377 Mass. 424, 428 n.9 (1979).
Once the plaintiff has established the prima facie case, the employer has only a single option: to produce credible evidence that a legitimate nondiscriminatoiy reason was the basis for its action. If the employer is able to demonstrate a legitimate nondiscriminatoiy reason for its action, supported by evidence of the underlying facts, then it has successfully rebutted the prima facie case. Unless the plaintiff can then show that the employer’s proffered reasons are in fact disingenuous or merely an attempt to obscure the real and unlawful reasons for the employer’s actions, the employer must prevail. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997). However, if the plaintiff can establish a prima facie case and demonstrate that the employer’s reasons for its hiring decision were pretextual, an inference arises that the employer acted with a discriminatoiy motive. Here, Massachusetts law parts company with federal law.
Under federal law, both Title VII and the Age Discrimination in Employment Act, a plaintiff must do more than demonstrate that the employer’s reason for its decision was pretextual. The plaintiff must also show that the employer’s actions were motivated by a discriminatoiy animus. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437 (1995), citing St Mary’s Honor Center v. Hicks, 509 U.S. 502 (1993). This has traditionally come to be known as a “pretext plus” analysis.
In contrast, Massachusetts has traditionally been known as a “pretext only” jurisdiction, wherein the plaintiff may prevail if the employer cannot rebut the prima facie case, if the employer’s stated reasons for its hiring decision is not supportable in the evidence or is “wholly disbelievable,” or if the plaintiff is able to show that the reasons proffered by the employer are pretextual. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. at 443. The plaintiff is only required to show that at least one of the reasons offered by the employer is untrue in order to raise the inference of discriminatoiy intent. Waite v. Goal Systems Intern., Inc., 55 Mass.App.Ct. 700, 704 (2002), citing Lipchitz v. Raytheon Co., 434 Mass. 493 (2001).
Recently, the Supreme Judicial Court has clarified the plaintiffs burden nonetheless to show that the employer did act with a discriminatory animus. Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 118 (2000). Even where a plaintiff can show pretext on the part of the employer, a verdict for the plaintiff is not thereby compelled. The plaintiffs burden is to show that the employer did act with a discriminatoiy animus. And, although plaintiff s proof of pretext raises an inference of discriminatoiy motive, the employer may “counter the effect of [the] evidence by showing that, even if his articulated reason for the adverse action is untrue, he had no discriminatoiy intent, or that his action was based on a different, nondiscriminatoiy reason.” Id.

Applicability of §623(j)

The City first argues that Curtis cannot bring a claim under the ADEA as §623(j) exempts firefighters and law enforcement officers from its reach. The ADEA includes several exceptions that allow age to be used as a criteria such as age as a bona fide occupational qualification, discharging or disciplining an employee for good cause, laws of a foreign workplace, seniority systems, and employee benefit plans. 29 U.S.C. §§623(f)(h)(i). Another lawful exception to the requirements of the ADEA is the hiring and retirement standards imposed by states and municipalities with regard to firefighters and law enforcement officers. 29 U.S.C. §623(j). That section provides that:
[i]t shall not be unlawful for an employer which is a State [or] a political subdivision of a State, to fail or refuse to hire or to discharge any individual because of such individual’s age if such action is taken—
(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date *394 described in such section, and the individual has attained—
(A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983 or
(B)(i) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; or
(ii) if applicable State or local law was enacted after September 30, 1996, and the individual was discharged, the higher of—
(I) the age of retirement in effect on the date of Such discharge under such law; and
(II) age 55; and
(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.
This so-called “safe-harbor provision” allows a municipality to lawfully retire or refuse to hire firefighters or law enforcement officers who have reached either the maximum age for hire or the maximum age of retirement in effect under state or local law on March 3, 1983.[8] The City contends that, by virtue of this provision, Fitchburg firefighters are exempt from the provisions of the ADEA. This is not quite right. Pursuant to §623(j), the City is free to establish both hiring and retirement criteria based on age, if “pursuant to a bona fide hiring or retirement plan.” In addition, §623(j) establishes a floor for mandatory retirement — essentially, whatever plan was in place on March 3, 1983. A state who has since adopted a more generous retirement age may use that or they could choose to fall back to the March 3, 1983 standard. The language of §623(j) is permissive, not mandatoiy and a state is not required to enforce any age-based standards. State Police for Automatic Retirement Ass’n. v. Difava, 317 F.3d 6, 14 (1st Cir. 2003). A ciiy could choose to hire older employees or elevate the age of retirement. In any event, a municipaliiy may apply the provisions of §623(j) but that in no way absolves the ciiy as an employer from adhering to other provisions of the ADEA, the purpose of which is to eliminate age discrimination in the workplace. Id. at 15.
In the case at bar, the issue raised by Curtis is not age discrimination in either hiring or retirement — both of which are exempted for firefighters and law enforcement personnel under §623(j). Rather, the issue is whether Curtis was subject to age discrimination at the time he applied for reinstatement to the Department. The City argues that the result of §623(j) is that the ADEA is not applicable to firefighters or law enforcement personnel and further alleges that Curtis is not even eligible for reinstatement as a firefighter as he is over the age of 32, the Department’s maximum age of hire.[9] G.L.c. 31, §58. That statute refers to an age requirement in the context of establishing a certification to the eligible list for “original” appointments. However, this is not an instance of a new hire. Curtis had been an employee of the Department for twenty-one years, had become disabled and was applying for reinstatement.
Curtis, as a firefighter out on disability, was not seeking to be placed on the eligible list for new hires; rather he was seeking reinstatement. If the age limitation for new hires was applicable to disability claims, no individual over the age of 32 who subsequently incurs a disability could ever be reinstated to the Department. The result would clearly contravene the intention of the statute, which was to encourage employees who had subsequently recovered from a disability to return to work and to insure that state employees were not abusing disability benefits. See White v. City of Boston, 428 Mass. 250 (1998).

The Prima Facie Case

Curtis was over age forty at the time he was certified by the medical panel as capable of returning to his former position as a firefighter. He alleges that certification by the medical panel and acceptance of that certification by the Fitchburg Board of Retirement requires that he be reinstated to his former position.[10] Curtis was not immediately reinstated to a position as firefighter although he alleges that there were four vacancies and the individuals hired to fill those four vacancies were all younger than Curtis — all in their twenties.[11]
Of critical importance in establishing a prima facie case is that Curtis be found capable of returning to his former duties as a firefighter. At the time of the first PERAC medical review, a panel of three psychiatrists determined that Curtis had recovered from his disability and recommended to the Fitchburg Retirement Board that he be returned to active service. The Ciiy objected to the order and refused to reinstate Curtis alleging that he had been evaluated using an improper standard. The City argued that the medical panel, in addition to assessing whether Curtis had recovered from his disability, should have also evaluated whether Curtis was physically able to resume his former duties. In its previous consideration of this issue, this Court determined that Curtis was not properly evaluated by the medical panel and therefore his order for reinstatement was invalid. Curtis v. City of Fitchburg, Civil No. 97-1375A (Worcester Super.Ct. December 17, 2001) (Donohue, J.).
If Curtis was evaluated using an improper standard, and was later determined to be unable to perform the essential elements of the job, then Curtis’ age discrimination claims under both state and federal law must fail. If he is incapable of performing the job, he cannot maintain the prima facie case. However, Cuts continues to argue that the May 1997 medical panel review applied the proper standards. See Sullivan v. Town of Brookline, 435 Mass. 353 (2001). He further alleges that the City denied him reinstatement at that time based on impermissible considerations of age and disability. Regardless of this Court’s order concerning which standard PERAC should have used when eval *395 uating Curtis’ medical condition, this Court must decide whether the City acted with a discriminatory animus by impermissibly using age as a determinative factor in its decision to hire the four firefighters for the available vacancies in the Department in June of 1997. For the purpose of a final resolution of the issues, this Court will consider Curtis’ age discrimination claims assuming that he meets the threshold requirement of establishing a prima facie case, notwithstanding that the record strongly suggests that the plaintiff will be unable to show that he can perform all the essential requirements of the job. [12]

Burden of Production

The City has the burden of production to rebut the prima fade case by articulating a legitimate nondiscriminatoiy reason for its employment decision that is supported by credible evidence. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. at 442. The City must be able to show that it acted for a legitimate reason and not as a “pretext for discriminatory conduct.” School Committee of Braintree v. Massachusetts Commission Against Discrimination, 377 Mass. at 430.
The City contends that it was notified sometime in the early months of 1997 that four senior firefighters would be retiring as of mid-July of that year. At some point Curtis also became aware of the potential vacancies in the Department. Acting in parallel, both parties began the process to fill the positions. Curtis initiated a review before the PERAC medical review panel and Roy petitioned the Mayor to secure a civil service list to replace the retiring firefighters. Roy knew of Curtis’ intentions to come back to the Department but he nevertheless followed procedure to replace the four retiring firefighters with individuals from the civil service list. The hiring process for the new firefighters was officially commenced on May 16, 1997 when the candidates were interviewed by Roy and culminated in their appointment by the Mayor on June 3, 1997, subject to approval by the City Council which it gave on June 17, 1997. During the course of this process, Roy was notified of the status of Curtis’ application with PERAC. On April 28, 1997 he was notified that a medical panel would be convened to evaluate Curtis’ present condition. Thereafter, on June 9, 1997 the Retirement Board notified Roy that Curtis could be returned to work as a firefighter.
Curtis contends that the vacancies were filled in an attempt to prevent him from being reinstated to a vacant position. However, since Curtis had been retired for more than five years, he was required to complete a retraining program prior to reinstatement.[13] G.L.c. 31, §39; Sullivan v. Town of Brookline, 435 Mass. at 362-63 (retirees returning after five or more years of disability retirement must complete a retraining program, and only on successful completion of that program will the employee be reinstated). Therefore, it is not necessary to determine the subtle issue of when the firefighter positions had been filled: at the time the candidates were sent for medical and physical examinations on May 23, 1997, at the time the Mayor appointed the firefighters on June 3, 1997, or when the City Council approved the appointments on June 17, 1997. Even assuming that the latest date, June 17, 1997 was the actual time that the vacancies were filled, Curtis was not eligible for reinstatement at that time since, according to G.L.c. 31, §39, in order to be reinstated he would have had to complete a retraining program. Roy stated that the situation had never previously arisen, and a retraining program was not in place but that a determination had since been made that a returning retiree absent from the Department for more than five years would have to complete the recruit training course at the Massachusetts Fire Academy. (Deposition, 133-34.) At that time the course consisted of eleven weeks of training in modem firefighting techniques. Clearly, even if Curtis had immediately commenced the retraining program upon his certification by PERAC on June 9, 1997, he would not have been eligible for reinstatement until at least early September, almost three months after the vacancies had been filled.
Curtis, having establishing a prima facie case, and the City, having met its burden of production in advancing a legitimate nondiscriminatoiy reason for its employment decision, advances the case to the next level of proof, requiring the plaintiff to show that the reason offered by the City for its employment decision is untrue and not the real reason for its decision. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. at 443. Curtis must show by a “preponderance of the evidence that the defendant’s asserted reasons were not the real reasons” for not reinstating Curtis. Id. Ultimately, Curtis’ burden of persuasion at this stage may be satisfied by direct or circumstantial evidence of discrimination. Id. In this instance, the record shows that no vacancies existed at the time the City was ordered to reinstate Curtis. This is not obviously the case where an employer is attempting to argue that the employee did not perform his job adequately; here, the City is merely stating that the reason it did not reinstate Curtis was that no position was then currently available. Moreover, it was necessary for Curtis to complete a retraining program before the City could reinstate him to a firefighter position.
The courts have acknowledged that often there will be no direct evidence of discrimination and that plaintiffs must often resort to the indirect construct of discrimination. Wooster v. Abdow Corporation, 46 Mass.App.Ct. 665, 670 (1999). Absent direct evidence, other relevant evidence which a court may consider on the issue of pretext may include whether employees who are not -within the protected class are treated differently, the employer’s practices and policies toward those employees within the protected category; and, the employer’s treatment of the plaintiff during his employment. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. at 447, citing Lewis *396 v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 767 (1986). Curtis argues that remarks made by Roy evidence a discriminatory motive in his decision not to reinstate him, and support his claim of pretext.
An isolated or ambiguous remark is simply not enough to imply a discriminatory motive based on age, unless supported by other credible evidence that the employer based its employment decision on the issue of age. Fontaine v. Ebtec Corp., 415 Mass. 309, 314 n.7 (1993). E.g. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. at 447 (where supervisor asked “Are you getting too old that you can’t handle two machines?” and told plaintiff that few people retire from Husky, held to be significant comments when viewed in light of plaintiffs prima facie case and other evidence that workers not in protected category treated differently); Compare Tardanico v. Aetna Life & Cas. Co., 41 Mass.App.Ct. 443, 449-50 (1996) (employee “had been around for a long time”; and that employee’s “bag was getting too heavy,” remarks ambiguous and insufficient to survive summary judgment).
Curtis states that he had a conversation with Roy at a local coffee shop sometime in April or May of 1997. In responding to Curtis’ question of how Roy felt about Curtis returning to the Department, Roy allegedly responded, “You know Phil, we go back a long ways and we’re friends, but my feelings are that this is a young man’s job.” Curtis also alleges that Roy stated, “Yeah, you were a good firefighter, but this is still a young man’s job.” Roy denied making these statements. (Deposition, 12-16.)
In his deposition, Roy disputed that he made any such comments. Instead, he stated that he acknowledged that Curtis had been a good firefighter, and in response to Curtis stating that he intended to return to the Department, Roy said “Phil, if you’re able and I’m ordered to take you back, then you’ll come back.” (Deposition, 13.) Roy further stated that this statement was made in the context of the changing retirement laws. In addition, Roy also stated that there was no past practice of anyone ever returning to the Department from disability retirement and that during his tenure he had been notified of only three previous medical reviews evaluating disability retirees and that the review process had taken anywhere from six months to a year. (Deposition, 58.) Roy also denied saying that firefighting was a young man’s game; rather, he stated he simply repeated remarks made by the future retirees, and that the comment did not reflect his personal opinion. (Deposition, 16.) Roy also stated that, although all of the future retirees were in their fifties at the time they gave notice of their retirement, Roy tried to discourage a couple of them from retiring “because they weren’t very old, I didn’t feel.” (Deposition, 16.) In addition, Roy stated that he expected the next available vacancy to occur in January of 2000 and that Curtis would be appointed to that position if he is found to be capable of performing the duties and undergoes retraining. (Deposition, 56.) Roy also offered statistics relative to the ages of firefighters currently employed by the Department: the average age was foriy-two; eighteen firefighters were in their fifties; forty-three were in their forties; twenty-nine in their thirties; and, seven in their twenties. (Deposition, 100-01.)
Therefore, as a matter of law, and upon the Rule 56 record, it becomes clear that Curtis, as the party with the burden of proof on the merits, will be unable to prove an unlawful motive on the part of the City in its failure to reinstate Curtis to a firefighter position, and on this ground, the City’s motion must be allowed.

Disability Discrimination

Curtis also alleges that he was not reinstated to his former position as a firefighter with the Department because he was subject to unlawful discrimination based on a disability. As with an age discrimination claim, a plaintiff must first exhaust administrative remedies before filing a disability discrimination claim in the Superior Court. As previously noted, Curtis appropriately and timely filed complaints with both the EEOC and the MCAD on August 1, 1997.
Curtis bases the allegation of disability discrimination on violations of both federal and state law. G.L.c. 151B, §4(16) provides, that it is an unlawful practice:
[flor any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer’s business.
The Americans with Disabilities Act (“ADA”) 42 U.S.C. §12112(a) provides that:
No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
Both G.L.c. 151B, §4(16) and the ADA apply to public entities. Chapter 151B, §1(5) defines employer as “the [Clommonwealth and all political subdivisions, boards, departments and commissions thereof.” The ADA defines a public entity as “any state or local government” and “any department, agency, special purpose district, or other instrumentality of a state or states or local government.” 42 U.S.C. §12131(1). Therefore, under both federal and state law the Department is a proper defendant.
In a claim of disability discrimination, the plaintiff must first establish the elements of a prima facie case. Although the federal and state statutes are not iden *397 tical in language, the standard for evaluating the claims are “substantially similar.” Under the ADA, a plaintiff must be able to show, by a preponderance of the evidence, that 1) he was disabled within the meaning of the Act, 2) he was able to perform the essential functions of the position with or without reasonable accommodation, and 3) he was discharged on account of his disability. Ward v. Massachusetts Health Research Institute, Inc., 209 F.3d 29, 33 n.2 (1st Cir. 2000). Under G.L.c. 151B, §4(16) the plaintiff must show that 1) he suffers from a disability, 2) he is qualified to perform the essential functions of the job with or without reasonable accommodation, 3) he suffered an adverse employment decision because of the handicap, and 4) the position remained open and the employer sought to fill the position. Darrt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 3 (1998); LaBonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997). That Curtis previously received benefits based on a claim of total disabiliiy, does not preclude him from asserting that he was discriminated against because of his disability if he is otherwise able to perform the job with a reasonable accommodation. Id. at 817.
Curtis is not able to establish the threshold burden of the prima facie case. The medical panel’s review of Curtis’ condition in May of 1997 specifically found that Curtis did not suffer from a disability. According to the medical panel he was fully recovered from the retirement related disabilities and it was on that basis that the panel recommended certification for reinstatement to his former position. Therefore, Curtis’ claim of disability discrimination under both state and federal law must fail.
CONCLUSION
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judgment on Count II of the Complaint be ALLOWED.

The parties entered into a stipulation of dismissal regarding certain claims in the amended complaint pursuant to Rule 41(a) of the Mass.R.Civ.P. The stipulation provided that claims against the individually named defendants be dismissed leaving only the claims against the City as a municipal body.

At that time the Mayor of Fitchburg was Jeffrey Bean.

Curtis argues that his reinstatement is governed by G.L.c. 32, §8 prior to amendment. (G.L.c. 32, §8 was amended by St. 1996, c. 306 effective November 7, 1996.) Pre-amendment language states in pertinent part:
If, as a result of the report of such regional medical panel, the board finds the mental or physical condition of such retired member has so changed that he is physically able to return to the same or a similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired member to return and be restored to active service in the same employment in which such member was employed at the time of his retirement or in a similar employment in the same governmental unit.
In the event that no such vacancy exists, and such position or a similar position is classified under civil service, the board and respective employer shall provide written notification with department of personnel administration who shall ensure that such retired member is reinstated to the first available suitable vacancy . . .

The “new” standards required the panel to consider, not only whether Curtis’ condition had so changed that he was physically able to return to the position of firefighter, but also whether he was able to perform the “essential duties of the position.” 840 Code Mass. Regs. §10.20 (1998).

Curtis’ two previous motions for reconsideration were denied. He appealed the first denial to a single justice of the Appeals Court. The single justice denied the motion and Curtis appealed to a single justice of the Supreme Judicial Court. The single justice of the Supreme judicial Court denied the motion and judgment was entered on March 16, 1999. A second motion for reconsideration based on the Appeals Court decision in Sullivan v. Town of Brookline, 50 Mass.App.Ct. 16 (2000), was denied by this Court on December 13, 2000 (Donohue, J.).

PERAC amended its regulations reflecting the new standards imposed by Statute 1996, c. 306 §16 on September 4, 1998.

The ADEA, initially applicable only to private employers, was amended in 1974 to include both state and local governments. The Supreme Court subsequently held that applying the provisions of the ADEA to state governments was a valid exercise of Congressional power under the Commerce Clause. EEOC v. Wyoming, 460 U.S. 226 (1983).

The provision was originally enacted in 1986 in response to the Court’s decision in EEOC v. Wyoming, 460 U.S. 226 (1983), finding that the ADEA prohibition against mandatory retirement was applicable to both state and local governments. Gately v. Commonwealth of Massachusetts, 2 F.3d 1221, 1228-29 (1st Cir. 1993). The provision was time limited and expired on December 31, 1993. Three years later, on September 30, 1996, Congress reinstated the safe-harbor provisions retroactively to December 31, 1993. State Police for Automatic Retirement Ass'n. v. Difava, 317 F.3d 6, 9 n.3 (1st Cir. 2003).

G.L.c. 31, §58 provides in pertinent part:
No person shall be eligible to have his name certified for original appointment to the position of firefighter or police officer in a city or town which has not accepted the provisions of sections sixty-one A and sixty-one B if such person has reached his thirty-second birthday on or before the final date for the filing of applications, as stated in the examination notice, for the examination used to establish the eligible list from which such certification is to be made.

Under the pre-amendment statute, the City would not be required to reinstate Curtis. The statute provided for reinstatement only with the approval of the department head. St. 1996, c. 306 abolished that discretion and mandated reinstatement. This section of the state is self-executing.

As noted previously, by statute the maximum age of hire for a firefighter is 32. G.L.c. 31, §58.

After remand, the medical panel convened so found. But this discussion, giving the plaintiff the benefit of all doubt assumes the first medical panel applied a proper standard.

G.L.c. 31, §39 states in pertinent part:
If a permanent employee who has become separated from his position because of disability shall be subsequently capable of employment as determined pursuant to section eight of chapter thirty-two, . . . [he] shall be placed in a position in the same or similar title in the department from which ha was separated... provided, however, that in the event that such placement of such employee occurs after a period of time greater than five years from the date of such separation . . . such placement shall be subject to the completion by such employee of a retraining program *398 established by the appointing authority, and approved by the personnel administrator. for the first time, and the clause was not conspicuously presented.